IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| KERRY BOOZER,<br><br>    Plaintiff,<br><br>    v.<br><br>JOSEPH SARRIA, et al.,<br><br>    Defendants. | CIVIL ACTION FILE<br>NO. 1:09-CV-2102-TWT |

ORDER

This is a civil rights action. It is before the Court on the Defendants' Motion for Summary Judgment [Doc. 24]. For the reasons set forth below, the Defendants' motion is GRANTED in part and DENIED in part.

I. Background

On July 17, 2007, at approximately 8:30 a.m., Atlanta Police Officers Nicholas Chimino and Joseph Sarria responded to a domestic disturbance call at 1570 Langston Avenue. As Officer Sarria arrived in the area, he observed Plaintiff Kerry Boozer walking toward a house located at 1560 Langston Avenue. Boozer shared this residence with his mother, Annie Aderhold. 1560 Langston Avenue is located two houses down from 1570 Langston Avenue, the location of the domestic disturbance

call. As Boozer reached the steps of his house, Defendants Sarria and Chimino exited their vehicles with weapons drawn and yelled at Boozer. The Plaintiff then turned around, took several steps toward the officers, and asked, "what's going on?"

According to the Plaintiff, Sarria and Chimino then yelled "get your ass on the ground." As Boozer began to kneel, Sarria and Chimino slammed him to the ground. Once on the ground, the Plaintiff claims that Sarria and Chimino handcuffed him and kicked him in the back and side more than ten times. When Boozer tried to look up, he claims that the officers stomped his face into the ground. While Boozer was on the ground, a third officer, William Ferris, arrived and informed the Defendants that they had the wrong address. According to the Plaintiff, Sarria and Chimino then stopped kicking Boozer and brought him to his feet.

While the Plaintiff was still on the ground, however, Boozer's mother, Annie Aderhold, emerged from her home to see what was happening. One of the officers[1] asked Ms. Aderhold if he could search her home. Ms. Aderhold said, "come on in." (Aderhold Dep. at 29.) After allowing the officer to search, Ms. Aderhold said, "I think it's time for you to go." Id. at 30. At that point, the officer exited her home.

---

[1] It is unclear which of the Defendants is alleged to have entered the Plaintiff's home.

After the search, Lieutenant Caroline Whitmire arrived on the scene and again informed the officers that they had the wrong address.  The officers then removed Boozer's handcuffs and proceeded to 1570 Langston Avenue, the location of the original domestic disturbance call.  After being released, Boozer told Officer Whitmire that he was injured and an ambulance transported him to Grady Hospital.

The Defendants deny Boozer's version of these events.  Although Sarria and Chimino admit that they detained and handcuffed Boozer, the Defendants deny kicking or stomping the Plaintiff.  Further, although the Defendants admit that they had the wrong address, they contend that they detained the Plaintiff because he ran when the officers arrived.

Following the incident, the Plaintiff filed a complaint with the Atlanta Police Department's Office of Professional Standards ("OPS").  OPS investigated Boozer's complaint and concluded that there was "insufficient evidence to sustain the allegations made by Mr. Boozer."  (Defs.' Br. in Supp. of Defs.' Mot. for Summ. J., Ex. F.)  Subsequently, the Plaintiff filed this lawsuit against the City of Atlanta, as well as Sarria and Chimino in their personal capacities.  The Plaintiff asserts violations of his Fourth Amendment rights under 42 U.S.C. § 1983 as well as state law claims for false imprisonment, assault and battery, negligent hiring, retention, training and/or supervision, and intentional infliction of emotional distress.  See O.C.G.A. §

51-7-20; O.C.G.A. § 51-1-13; O.C.G.A. § 51-1-14. The Defendants have filed a Motion for Summary Judgment [Doc. 24].

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III. Discussion

### A. Insufficient Training

The Defendants contend that there is no issue of material fact as to the Plaintiff's insufficient training and/or supervision claim. The Plaintiff claims that the City of Atlanta failed to properly supervise and train its police officers. Boozer argues that this lack of training caused Sarria and Chimino to violate his constitutional rights.

"Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality . . . can a city be liable for such a failure under § 1983." City of Canton v. Harris, 489 U.S. 378, 389 (1989). To establish deliberate indifference, the plaintiff must show "some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998). A municipality may be put on notice in one of two ways. First, a city is on notice if it has knowledge of prior constitutional violations. Id. at 1351. Alternatively, even without knowledge of prior violations, a municipality has notice if the likelihood of a violation is so high that the need for training is obvious. Id. at 1351-52.

Here, the Plaintiff has not shown that the City of Atlanta was deliberately indifferent. Major Siobhan O'Brien, the Commander of the City of Atlanta Police Academy, testified that the City of Atlanta provides each officer 800 hours of training at the police academy and 480 hours of field training. (O'Brien Decl. ¶ 5.) This training covers criminal law, procedure, defensive tactics, the appropriate use of force, and the mechanics of an arrest. Id. ¶¶ 6, 8. Major O'Brien also testified that it is department policy to use the minimum amount of force necessary to make an arrest. Id. ¶ 7. Further, each year, every Atlanta police officer receives twenty-four hours of training that re-emphasizes the factors justifying the use of force. Id. ¶ 9.

In support of his claim, Boozer offers an excerpt from a City of Atlanta report dealing with police training. The excerpt simply notes that the officers polled rated the City's training programs "excellent" or "good" in only five of twenty-nine areas. The report offers no record of prior constitutional violations. The Plaintiff offers no evidence that the City of Atlanta had notice of constitutional violations resulting from a failure to train or supervise. See Wright v. Sheppard, 919 F.2d 665, 674 (11th Cir. 1990) (finding no deliberate indifference where plaintiff offered "no evidence of a history of widespread prior abuse . . . that would have put the [defendant] on notice of the need for improved training of supervision."). Further, the City of Atlanta has presented evidence that it provides extensive training designed to ensure that constitutional violations do not occur. For these reasons, there is no issue of material fact as to the Plaintiff's claim for insufficient training or supervision.

    B.    Unlawful Search

The Plaintiff claims that one of the Defendants[2] illegally searched the Plaintiff's home in violation of the Fourth Amendment. Under the Fourth Amendment, a search conducted "without a warrant issued upon probable cause is '*per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'"

---

[2] As mentioned above, the Plaintiff does not specify which of the Defendants searched his home.

United States v. Garcia, 890 F.2d 355, 360 (11th Cir. 1989) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973)).  "One of the well-established exceptions to the probable cause and warrant requirements is a search which is conducted pursuant to voluntary consent."  Id.  This consent must be the product of "essentially free and unconstrained choice."  Id.

Here, the officer asked Ms. Aderhold if he could search the house that she shared with Boozer.  Ms. Aderhold said "come on in."  (Aderhold Dep. at 29.)  The Defendant, however, implies that Ms. Aderhold may have been coerced into giving her consent. This argument is without merit.  The officer did not threaten or intimidate Ms. Aderhold.  Indeed, Ms. Aderhold testified that he was neither polite nor abrupt, but "[a] little of both; in between."  Id. at 30.  Thus, there is no evidence that Ms. Aderhold did not give her consent freely.  For this reason, there is no issue of material fact as to the Plaintiff's illegal search claim.

    C.    Illegal Seizure

The Plaintiff also contends that the Defendants illegally seized him in violation of his Fourth Amendment rights.  The parties disagree as to whether Boozer's detention constitutes an arrest, requiring probable cause, or merely a Terry stop, requiring only reasonable suspicion. See Terry v. Ohio, 392 U.S. 1 (1968).  "An arrest may occur even if the formal words of arrest have not yet been spoken if a person is

restrained and his freedom of movement is restricted." United States v. Levy, 731 F.2d 997, 1000 (2d Cir. 1984) (citing Henry v. United States, 361 U.S. 98, 102-3 (1959)). Here, viewing the facts in the light most favorable to Boozer, the Court could conclude that an arrest had occurred when Boozer was thrown on the ground and handcuffed.

Even under the less stringent reasonable suspicion standard, however, the Plaintiff has shown facts possibly establishing a Fourth Amendment violation. "An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." United States v. Cortez, 449 U.S. 411, 417 (1981). The Defendants argue that "[a] dispatcher who reports a crime at a specified location gives police an articulable suspicion to investigate and detain individuals at the scene." Moore v. State, 281 Ga. App. 141, 143 (2006) (quoting State v. Gomez, 266 Ga. App. 423, 425-26 (2004)).

Here, however, the Defendants did not detain Boozer at the location specified by the dispatcher. Officers Sarria and Chimino were at the wrong address. When the Defendants arrived, Boozer was walking back to his home. Boozer's detention was not based on any *objective facts* known to the Defendants at the time. See Humphrey v. Mabry, 482 F.3d 840, 847 (11th Cir. 2007) (finding "a reasonable jury could conclude that the [defendants] violated [plaintiff's] Fourth Amendment rights when

they misidentified his car, stopped him at gunpoint, forcibly seized him and restrained him, albeit briefly."). For these reasons, there is a question of material fact as to the Defendants' claim for illegal seizure.

### D. Excessive Force

The Defendants move for summary judgment on Boozer's excessive force claim. "[C]laims of excessive force are to be judged under the Fourth Amendment's 'objective reasonableness' standard." Brosseau v. Haugen, 543 U.S. 194, 197 (2004) (citing Graham v. Connor, 490 U.S. 386, 388 (1989)). In making this determination, courts should consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Crenshaw v. Lister, 556 F.3d 1283, 1290 (11th Cir. 2009).

Here, the facts viewed in the light most favorable to the Plaintiff establish a possible claim for excessive force. According to the Plaintiff, the Defendants kicked him at least ten times in the side and back while he was lying on the ground. When Boozer attempted to look up, the Defendants stomped his head. During the encounter, Boozer did not resist or attempt to flee. Indeed, the officers threw Boozer to the ground as he was beginning to kneel. See Lee v. Ferraro, 284 F.3d 1188 (11th Cir. 2002) (finding excessive force where officers slammed plaintiff's head into trunk

while plaintiff was handcuffed and not resisting); Payne v. Pauley, 337 F.3d 767, 779 (7th Cir. 2003) (finding excessive force where plaintiff was not resisting and officer twisted plaintiff's arms behind her back and over-tightened handcuffs). Notwithstanding the credibility issues with respect to the Plaintiff's testimony, there is an issue of material fact as to the Plaintiff's excessive force claim.

E.     Qualified Immunity

The Defendants argue that Sarria and Chimino are entitled to qualified immunity. "Qualified immunity shields government officials from liability for civil damages for torts committed while performing discretionary duties unless their conduct violates a clearly established statutory or constitutional right." Hadley v. Gutierrez, 526 F.3d 1324, 1329 (11th Cir. 2008) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To establish qualified immunity, the defendant must show that he was acting within the scope of his discretionary authority. Crenshaw, 556 F.3d at 1289. The burden then shifts to the plaintiff to show (1) that the conduct violated a constitutional right, and (2) that the right was clearly established at the time of the defendant's alleged misconduct. Humphrey, 482 F.3d at 846 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).[3]  A right is 'clearly established' if "*no* reasonably

---

[3]In Pearson v. Callahan, 129 S. Ct. 808, 818 (2009), the Supreme Court held that courts may use their discretion in deciding which of these two questions to answer first.

competent officer would have taken the same action." Id. at 847 (emphasis in original).  Further, where the alleged violation involves a mistake by an official, "qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting Groh v. Ramirez, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)).

Here, Defendants Sarria and Chimino were performing a discretionary function when they seized the Plaintiff and searched his home.  Although Boozer argues that the Defendants were performing a ministerial duty, detaining a suspect is a discretionary act under federal law.  See Crenshaw, 556 F.3d at 1289-90 ("it is clear that [the defendants] were both performing discretionary duties when pursuing and apprehending [the plaintiff].").  Further, as discussed above, the search of Boozer's residence did not violate the Fourth Amendment.  Thus, the Court will focus on the Plaintiff's illegal seizure and excessive force claims.

The Defendant officers are entitled to qualified immunity as to the illegal seizure claim.  Here, Sarria and Chimino made a mistake of fact as to the address of the domestic disturbance call.  See Pearson, 129 S. Ct. at 815 (qualified immunity applies where official's error is mistake of fact).  In Humphrey, the plaintiff brought an illegal seizure claim against a police officer who mistook the plaintiff's car for that

of a fleeing suspect.  Humphrey, 482 F.3d at 850.  The plaintiff's car was dark colored while the suspect's car was grey.  Id.  The Eleventh Circuit noted that although the defendant's "mistakes were unfortunate, and . . . fall short of the ideal standards of diligence expected of officers," the defendant was entitled to qualified immunity.  Id. at 851.  The court reasoned that "the [defendant's] mistakes were not so egregious that we would characterize them as plain incompetence or mistakes no reasonable officer would make in the circumstances."  Id. at 850.

Similarly, here, the Defendants' mistake as to Boozer's address was unfortunate and fell below the standard of diligence expected from police officers. Still, the Defendants misread the address by only one number.[4]  The correct house, 1570 Langston Avenue, was only two houses down.  The Defendants, responding to a domestic disturbance call, did not have a great deal of time to review street addresses. Under these circumstances, the Court cannot say that "no reasonable officer" would make such a mistake.  For this reason, Defendants Sarria and Chimino are entitled to qualified immunity on the Plaintiff's illegal seizure claim.

The Plaintiff's excessive force claim, however, presents a different question. A defendant is not entitled to qualified immunity for an excessive force claim where

---

[4] The dispatcher reported a domestic disturbance at 1570 Langston Avenue. The Defendants detained Boozer at 1560 Langston Avenue.

"his conduct goes 'so far beyond the hazy border between excessive and acceptable force that [he knows that he is] violating the Constitution.'" Reese v. Herbert, 527 F.3d 1253, 1274 (11th Cir. 2008) (quoting Priester v. City of Riviera Beach, 208 F.3d 919, 926-27 (11th Cir. 2000)). Where an officer uses significant force against a compliant suspect, courts have generally denied the protections of qualified immunity. See Hadley, 526 F.3d at 1330 (finding no qualified immunity where suspect punched in stomach while not resisting or presenting threat); Reese, 527 F.3d at 1273 (no qualified immunity where officers threw plaintiff against wall, twisted his arm, and kicked and beat him while plaintiff was on ground); Lee, 284 F.3d at 1191, 1198 (denying qualified immunity where defendant slammed plaintiff's head into car even though plaintiff did not resist and did not present a threat).

Here, viewing the facts in the light most favorable to the Plaintiff, the Defendants are not entitled to qualified immunity for Boozer's excessive force claim. Boozer never resisted the officers. Nor did he pose any threat to their safety while he was lying on the ground. Still, the Defendants threw Boozer to the ground and kicked him in the back and side. No reasonable officer would believe that it was proper to kick a suspect while that suspect was lying on the ground, not resisting in any way. For this reason, Defendants Sarria and Chimino are not entitled to qualified immunity for the Plaintiff's excessive force claim.

F.  State Law Claims

The Plaintiff also asserts state law claims for false imprisonment, assault and battery, negligent hiring, retention, training and/or supervision, and intentional infliction of emotional distress.

1.  Sovereign Immunity

The City of Atlanta argues that it is entitled to sovereign immunity.[5] O.C.G.A. § 36-33-1(a) states that:

> Pursuant to Article IX, Section II, Paragraph IX of the Constitution of the State of Georgia, the General Assembly, except as provided in this Code section and in Chapter 92 of this title, declares it is the public policy of the State of Georgia that there is no waiver of the sovereign immunity of municipal corporations of the state and such municipal corporations shall be immune from liability for damages. A municipal corporation shall not waive its immunity by the purchase of liability insurance, except as provided in Code Section 33-24-51 or 36-92-2, or unless the policy of insurance issued covers an occurrence for which the defense of sovereign immunity is available, and then only to the extent of the limits of such insurance policy. This subsection shall not be construed to affect any litigation pending on July 1, 1986.

O.C.G.A. § 36-33-1(a).  Further, O.C.G.A. § 36-33-3 states:

> A municipal corporation shall not be liable for the torts of policemen or other officers engaged in the discharge of the duties imposed on them by law.

---

[5] The Defendants correctly point out that the Plaintiff's claims against Sarria and Chimino in their official capacities are merely claims against the City of Atlanta. Kentucky v. Graham, 473 U.S. 159, 166 (1985).

O.C.G.A. § 36-33-3.

Thus, the City of Atlanta is entitled to sovereign immunity unless it maintains liability insurance covering the acts alleged by the Plaintiff. Here, the City of Atlanta does not maintain liability insurance covering incidents of illegal seizure or excessive force. (Detter Aff. ¶ 4.) The Plaintiff makes no argument to the contrary. For this reason, the City of Atlanta is entitled to sovereign immunity with respect to the Plaintiff's state law claims.

### 2. Official Immunity

Defendants Sarria and Chimino argue that they are entitled to Official Immunity in their individual capacities. The Georgia Constitution provides that:

> all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions.

GA. CONST. art. I, § 2, ¶ IX(d). Thus, although an officer may be liable for negligent performance of ministerial duties, an officer is only liable for performance of discretionary duties if he acts with malice or intent to injure. Cameron v. Lang, 274 Ga. 122, 125 (2001). Under Georgia law, Sarria and Chimino were performing a discretionary function when they responded to the domestic disturbance call. See Gilbert v. Richardson, 264 Ga. 744, 753 (1994) (officer performing discretionary

function when responding to emergency call). Thus, the Defendant officers are entitled to official immunity unless they acted with malice or intent to injure.

Viewed in the light most favorable to the Plaintiff, however, Sarria and Chimino's conduct evinces both malice and intent to injure. While Boozer was lying on the ground, the Defendants kicked Boozer repeatedly. Boozer posed no threat to the officers and he was not resisting. The logical inference of such behavior is that the Defendants intended to injure the Plaintiff. For this reason, Sarria and Chimino are not entitled to official immunity with respect to the Plaintiff's state law claims.

## IV. Conclusion

For the reasons set forth above, the Defendants' Motion for Summary Judgment [Doc. 24] is GRANTED in part and DENIED in part.

SO ORDERED, this 1 day of October, 2010.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge